E-FILED
Wednesday, 09 November, 2005 04:44:37 PM
Clerk, U.S. District Court, ILCD

# United States Court of Appeals

## For the Seventh Circuit

### Chicago, Illinois 60604
**NOTICE OF ISSUANCE OF MANDATE**

DATE:   October 25, 2005

TO:     John M. Waters
        United States District Court
        Central District of Illinois
        151 U.S. Courthouse
        600 E. Monroe Street
        United States Courthouse & Federal Building
        Springfield, IL  62701

*FILED*

*OCT 3 1 2005*

*JOHN M. WATERS, Clerk*
*U.S. DISTRICT COURT*
*CENTRAL DISTRICT OF ILLINOIS*

FROM:   Gino J. Agnello, Clerk

RE:     03-4144
        Van Diest Supply Co v. Shelby County State
        99 C 3195, Jeanne E. Scott, Judge

        Herewith is the mandate of this court in this appeal, along
        with the Bill of Costs, if any.  A certified copy of the
        opinion/order of the court and judgment, if any, and any
        direction as to costs shall constitute the mandate.

        [ ] No record filed
        [X] Original record on appeal consisting of:

**ENCLOSED:**                          **TO BE RETURNED AT LATER DATE:**
        [ ]     Volumes of pleadings                  [2]
        [ ]     Volumes of loose pleadings            [1]
        [ ]     Volumes of transcripts                [ ]
        [ ]     Volumes of exhibits                   [ ]
        [ ]     Volumes of depositions                [ ]
        [ ]     In Camera material                    [ ]
        [ ]     Other_____        [ ]

                Record being retained for use         [ ]
                in Appeal No. _____

        Copies of this notice sent to:         Counsel of record
        [ ]     United States Marshal
        [ ]     United States Probation Office

**NOTE TO COUNSEL:**
        If any physical and large documentary exhibits have been filed in
        the above-entitled cause, they are to be withdrawn ten days from the
        date of this notice.  Exhibits not withdrawn during this period will
        be disposed of.

        Please acknowledge receipt of these documents on the enclosed copy
        of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
        Received above mandate and record, if any, from the Clerk, U.S.
        Court of Appeals for the Seventh Circuit.

Date: ___10/31/05___                    ___/s/ B Race/___
(1071-120397)                           Deputy/Clerk, U.S. District Court

# United States Court of Appeals

## For the Seventh Circuit

## Chicago, Illinois 60604

### JUDGMENT - WITH ORAL ARGUMENT

*CERTIFIED COPY*

**Date: October 3, 2005**

**BEFORE:**     Honorable TERENCE T. EVANS, Circuit Judge

Honorable ANN CLAIRE WILLIAMS, Circuit Judge

Honorable DIANE S. SYKES, Circuit Judge

No. 03-4144

VAN DIEST SUPPLY COMPANY, an Iowa corporation,
                    Plaintiff - Appellant
    v.

SHELBY COUNTY STATE BANK, an Illinois banking corporation,
                    Defendant - Appellee

Appeal from the United States District Court for the
Central District of Illinois
No. 99 C 3195, Jeanne E. Scott, Judge

          The judgment of the District Court is AFFIRMED, with costs,
    in accordance with the decision of this court entered on this date.

(1061-110393)

A True Copy:
Teste:

Clerk of the United States
Court of Appeals for the
Seventh Circuit

CERTIFIED COPY

# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-4144

VAN DIEST SUPPLY CO.,

*Plaintiff-Appellant,*

*v.*

SHELBY COUNTY STATE BANK,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 99 C 3195—Jeanne E. Scott, *Judge.*

ARGUED SEPTEMBER 15, 2004—DECIDED OCTOBER 3, 2005

Before EVANS, WILLIAMS, and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Van Diest Supply Co. and
Shelby County State Bank ("Shelby") both assert a secu-
rity interest in proceeds of accounts resulting from inven-
tory Van Diest sold to Hennings Feed and Crop Care
("Hennings"). This case arose after Hennings filed for
bankruptcy and was unable to pay for certain inventory
it had purchased from Van Diest. Pursuant to a loan
agreement with Hennings, Shelby had received the
proceeds of many Hennings accounts receivable. Van Diest
claimed a first, perfected purchase money security inter-
est in proceeds of inventory it sold to Hennings and
sued Shelby for conversion, seeking to recover the pro-
ceeds of inventory it sold to Hennings. The district court,

in granting Shelby's motion for summary judgment, ruled
that Van Diest had not presented evidence sufficient to
carry its burden of identifying the proceeds. We agree
and so affirm the decision of the district court.

## I. BACKGROUND

At issue here are the proceeds of certain inventory that
Van Diest Supply Co. sold to Hennings Feed and Crop
Care. Hennings was a retail dealer in agricultural prod-
ucts, including chemicals, fertilizer, and limestone who
purchased inventory from multiple suppliers, including
Van Diest. In 1983, Van Diest and Hennings executed an
agreement that granted Van Diest a purchase money
security interest in inventory supplied by Van Diest, and
the proceeds from such inventory. We concluded in an
earlier case that the security interest did not extend to
all Hennings inventory; instead, it was limited to inven-
tory Van Diest supplied to Hennings. *Shelby County State
Bank v. Van Diest Supply Co.*, 303 F.3d 832, 840 (7th Cir.
2002).

Although Hennings had multiple suppliers, it did not (1)
segregate inventory by supplier, (2) track inventory by
supplier, or (3) know on any given day how much inventory
it had on hand from any supplier. On May 16, 1998,
Hennings and Shelby signed a "Draw Note-Fixed Rate"
agreement that allowed Hennings to draw up to $4 mil-
lion at a time, and Shelby made advances to Hennings
under the Note in exchange for Hennings's accounts
receivable. Shelby then collected the receivables. Shelby
purchased Hennings's receivables from May 1998 until
either December 14, 1998 or January 7, 1999 and received
payments totaling over $2 million.

In late March or early April 1999, Van Diest received a
financial statement from Hennings dated September 30,

No. 03-4144                                                    3

1998. Based on the financial statement, Van Diest's credit
manager believed Hennings was insolvent. Van Diest had
already shipped additional product to Hennings, and
payment was not due until June 11, 1999. Hennings
was still current on its obligations, and Van Diest did not
take any steps to enforce its rights under its security
agreement with Hennings.

April 1999 also marked the first time that Hennings
conducted a physical inventory. At the time, Hennings's
computer records listed an inventory of approximately
$7 million, but a check of the physical inventory revealed
a missing $2.5 million in inventory.

Hennings first defaulted on a payment to Van Diest on
June 11, 1999 and that day, Van Diest sent a demand
letter to Hennings requesting payment in full. Van Diest
did not learn of Shelby's factoring arrangement with
Hennings until July 1, 1999. Hennings filed for bankruptcy
the next month, on August 23, 1999. Van Diest then
demanded payment of the funds paid to Shelby from the
accounts factored under the Note, and Shelby refused to
pay Van Diest.

Van Diest filed suit against Shelby, alleging that Shel-
by converted its property. The district court granted sum-
mary judgment in favor of Shelby, and Van Diest now
appeals.

## II. ANALYSIS

Our review of a district court's grant of summary
judgment is de novo. *Dumas v. Infinity Broad. Corp.*, 416
F.3d 671, 676 (7th Cir. 2005). Summary judgment is
proper only when "there is no genuine issue as to any
material fact and the moving party is entitled to judg-
ment as a matter of law." Fed. R. Civ. P. 56(e); *Celotex
Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We will review

4                                    No. 03-4144

all the facts and draw all reasonable inferences in favor
of Van Diest, the non-moving party. *Dumas*, 416 F.3d at
676. To defeat a motion for summary judgment, the non-
moving party cannot rest on the mere allegations or
denials contained in his pleadings, but "must present
sufficient evidence to show the existence of each element
of its case on which it will bear the burden at trial." *Robin
v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000)
(citations omitted). "However, neither presenting a scin-
tilla of evidence, . . . nor the mere existence of some al-
leged factual dispute between the parties or some meta-
physical doubt as to the material facts, is sufficient to
oppose a motion for summary judgment. . . . The party
must supply evidence sufficient to allow a jury to render
a verdict in his favor." *Id.* at 1088 (internal citations
omitted).

Van Diest sued Shelby under a theory of conversion, a
dispute governed by state law. In diversity cases, we
apply the substantive law of the state in which the district
court sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).
Here, Illinois law governs the dispute. In order to recover
for conversion in Illinois, a plaintiff must show: (1) a right
to the property; (2) an absolute and unconditional right
to the immediate possession of the property; (3) a de-
mand for possession; and (4) that the defendant wrong-
fully and without authorization assumed control, domin-
ion, or ownership over the property. *Cirrincione v. John-
son*, 703 N.E.2d 67, 70 (Ill. 1998).

Van Diest held a perfected, first priority purchase money
security interest in the inventory it sold to Hennings.
Shelby, also a secured party, claimed a security interest
in all inventory, accounts receivable, and equipment of
Hennings. Van Diest contends that Shelby converted its
property when Shelby received the proceeds from the sale
of inventory Van Diest had supplied to Hennings. Van

No. 03-4144                                           5

Diest does not challenge the district court's finding that
the funds Hennings paid to Shelby directly by check
written on Hennings's bank accounts are not at issue. Still
at issue, though, are the direct payments to Shelby from
Hennings's customers which did not pass through
Hennings's bank account. After Hennings drew on the
Note, and Shelby received accounts, Hennings customers
either paid Shelby directly or wrote checks to Hennings,
which Hennings delivered to Shelby. Van Diest contends
it can show that each of these payments came from the
sale of its collateral by showing the proportion of
Hennings's inventory on the date of each transaction that
was attributable to product that Van Diest had provided
to Hennings.

The conduct that forms the basis of Van Diest's com-
plaint occurred before July 1, 2001 and before the Illinois
legislature enacted a revised version of Article 9 to its
Uniform Commercial Code. *See* Ill. P.A. 91-893 § 5 (July 1,
2001). The parties do not dispute that the Code as it
existed prior to July 1, 2001 applies in this case. At the
time relevant here, the Code defined "proceeds" to in-
clude "whatever is received upon the sale, exchange,
collection or other disposition of collateral or proceeds."
810 ILCS § 5/9-306(1) (West 1994). Significantly here, the
Code also provided that a party continued to have a
security interest in the proceeds of the sale of inventory
to the extent that the proceeds were "identifiable." 810
ILCS § 5/9-306(2) (West 1994).

It is clear in Illinois that commingling does not neces-
sarily make proceeds unidentifiable. First, 810 ILCS § 5/9-
205 (West 1994) specifically provides that "a security
interest is not invalid . . . by reason of liberty in the debtor
to use, commingle, or dispose of all or part of the collat-
eral . . . or to use, commingle, or dispose of proceeds." In
addition, section 9-306(2) (West 1994) states that a
security interest "continues in any identifiable proceeds."

6                                          No. 03-4144

Finally, the Illinois Supreme Court recognized in *C.O. Funk & Sons, Inc. v. Sullivan Equip., Inc.*, 431 N.E.2d 370, 372 (Ill. 1982) that a security interest could continue in a commingled account if the proceeds were identifiable. *See also Brown & Williamson Tobacco Corp. v. First Nat'l Bank*, 504 F.2d 998, 1001-02 (7th Cir. 1974). Therefore, so long as the proceeds were identifiable, Van Diest's security interest in the proceeds of the sale of the inventory it supplied to Hennings continued.

The Code does not define the term "identifiable." It does, however, direct that its provisions should be supplemented by "principles of law and equity." 810 ILCS § 9/1-103 (West 1994). Like many other courts, the Illinois Supreme Court has construed this provision to allow a party to identify proceeds using a tracing theory known in the law of trusts as the "lowest intermediate balance rule." *See Funk*, 431 N.E.2d at 372-73.

In this case, the district court concluded that Van Diest did not present evidence sufficient to allow it to identify its proceeds. Therefore, it concluded that Van Diest had not presented evidence that it had an ownership interest in the proceeds Shelby received from the sale of Hennings's inventory, an immediate right to possession of those proceeds, or that Shelby assumed wrongful control over those proceeds. Because Van Diest had not presented sufficient evidence on elements for which it had the burden at trial, the district court granted Shelby's motion for summary judgment.

On appeal, Van Diest contends the district court erred when it found it could not trace its proceeds. Unfortunately, Hennings's commingling of the inventory it purchased from multiple suppliers makes this case difficult. Hennings purchased the same product from more than one supplier, but it did not segregate the inventory it received by supplier. In addition, although Hennings

No. 03-4144                                                    7

maintained records of the products it sold, these records
did not track the company that had supplied Hennings
with the product sold.

*Funk* is the only Illinois Supreme Court case to con-
sider whether proceeds of collateral were sufficiently
identified to subject them to a security interest. In that
case, the court placed the burden of identification on the
party seeking to identify the proceeds, stating, "Since
Funk is claiming a prior security interest in property
which is otherwise identified as collateral belonging to
the bank under its after-acquired property clause, the
burden of identifying the proceeds is properly upon Funk."
431 N.E.2d at 373. The court then found that Funk failed
to identify the proceeds, stating:

> Funk argues that it established a *prima facie*
> case by showing that secured property was sold,
> that the proceeds were deposited into an account,
> and that other items of inventory were purchased
> from that account, and that upon such showing the
> burden should shift to another to segregate the
> wrongfully commingled funds. Were we concerned
> here with the rights of Funk against Sullivan this
> argument would have considerable merit. The
> bank, however, was neither responsible for Funk's
> position nor for the commingling and is at least as
> innocent as Funk. We find no principles in law or
> equity which dictate that the innocent third party
> must suffer the consequences of Funk's predica-
> ment. Section 9-306 says that the security interest
> attaches to identified proceeds. . . . Funk failed to
> offer the proof required to identify the claimed
> proceeds and is not now entitled a second opportu-
> nity to do so.

*Id.*

*Funk* makes clear that Van Diest has the burden of identifying the proceeds from the sale of the inventory it supplied. *See id.* "Van Diest has admitted that it "cannot at this time state the amount of its pro rata share in the mass of inventory." It contends, however, that the amount of its pro rata share is an issue of fact for trial or relevant only to damages. We disagree that tracing of Van Diest's proceeds is only a means to calculate damages and is not relevant to liability, as *Funk* clearly states that a security interest continues only in "identifiable proceeds." 431 N.E.2d at 372. When it recently considered the same argument, the Eighth Circuit explained, "tracing . . . is not a measure of damages. It is the primary means of demonstrating the plaintiff's rights, and therefore the defendant's liability, in cases involving commingled accounts. . . . Without equitable tracing, [the plaintiff] cannot make out a claim for conversion because it cannot establish that the funds allegedly converted were identifiable proceeds in which it had a security interest." *General Elec. Capital Corp. v. Union Planters Bank, N.A.*, 409 F.3d 1049, 1059 (8th Cir. 2005).

We also disagree with Van Diest that it has presented sufficient evidence to survive summary judgment and that only an issue of fact as to the amount of its pro rata share remains. To carry its burden of identifying proceeds, Van Diest has chosen to employ a pro rata tracing method that it contends was used in *In re San Juan Packers, Inc.*, 696 F.2d 707 (9th Cir. 1983), and *In re Halmar Distributors, Inc.*, 232 B.R. 18 (Bankr. D. Mass. 1999). Although Illinois courts have not considered whether proration is an appropriate means of tracing where more than one creditor has a security interest in commingled proceeds, *cf. Funk*, 431 N.E.2d at 372-73 (recognizing lowest intermediate balance rule as an appropriate method of tracing), other courts have recognized that proration can be used to trace commingled proceeds. *See Halmar*, 232 B.R. at

26; *Gen. Motors Acceptance Corp. v. Norstar Bank, N.A.*, 532 N.Y.S.2d 685 (N.Y. Sup. Ct. 1988); *Bombardier Capital, Inc. v. Key Bank of Maine*, 639 A.2d 1065 (Me. 1994). Shelby agrees that, as a general matter, the pro rata method of tracing is an acceptable methodology for tracing collateral. It contends, however, that the method is not appropriate here.

The court in *Halmar* described the proration method of tracing proceeds as an approach where "a court may consider identifiable proceeds as a pro-rata share of the commingled account, the share being determined by the percentage of collateral owned by the secured creditor before the proceeds were commingled." 232 B.R. at 26. In this case, as a result of the Note agreement between Hennings and Shelby, Hennings's customers either paid Shelby directly or wrote checks to Hennings which Hennings delivered to Shelby. Van Diest maintains it can demonstrate that each payment resulted from the sale of its collateral by showing the proportion of Hennings's inventory on the date of each transaction attributable to inventory Van Diest had supplied to Hennings. As the district court explained, Van Diest's approach posited that if, "[f]or example, on October 1, 1997, Van Diest had supplied Hennings with 10% of its inventory in Product A, then Van Diest would have had a security interest in 10% of the total inventory in Product A on that day, and 10% of the proceeds from the sale of Product A on that day."

The problem with the methodology Van Diest has employed is that it requires it to present evidence at some point in time of the percentage of Hennings inventory supplied by Van Diest. Van Diest, however, has presented no such evidence. To the contrary, Van Diest acknowledges that "It was not possible to know the total amount of any particular product that was on hand on any particular day. No records exist that show the various percent-

ages of products supplied by different suppliers as of any particular day." (Undisp. Facts 11.)

If there was evidence of the proportion of Hennings inventory attributable to Van Diest, then to show the proportion of sale attributable to Van Diest product on any given day, Van Diest could present evidence of increases and decreases in Hennings's inventory over time as Hennings purchased more inventory from suppliers and sold inventory to customers. Without an initial percentage, however, Van Diest's methodology fails.

In an effort to present the necessary evidence, Van Diest submitted the affidavit of Douglas Main, a paralegal, numerous records, and reports Main produced from these records. Main selected October 1, 1997 as the starting point for determining Van Diest's interest in inventory it supplied to Hennings. He then created reports, including a report summarizing Hennings's purchases by product during the period from October 1, 1997 through December 9, 1998. This report detailed the total dollars of all purchases, the total dollar of purchases from Van Diest, and the resulting percentage of Van Diest's purchases to the total of all purchases. For each product detailed, Main then multiplied this percentage against every account for which an invoice appeared on Shelby's records, regardless of when the account was generated or whether the account had been paid by check from an account debtor or by Hennings from its general deposit account. Main concluded that Shelby received $5,095,034.15 from the sale of Hennings's inventory and that 18.66%, or $950,477.55, was the proportionate share subject to Van Diest's security interest.

Main stated that in arriving at his conclusions, he made several assumptions. These assumptions included that the data he received concerning Hennings's purchases of inventory was accurate and that "Van Diest's shares of

the beginning product inventories were in the same pro-
portion to its shares of those same products which it
supplied during the period of 10/1/97 through 12/9/98." The
district court concluded that neither assumption had
support in the record.

Van Diest contends that the district court's determina-
tion that the records were unreliable constituted a factual
or credibility determination not proper at the summary
judgment stage. It is undisputed, however, that on any
given day in 1998 or 1999, Hennings did not know how
much inventory it had in its warehouse from any supplier.
Moreover, Hennings did not check its records against
a physical inventory until April 1999. It is also undis-
puted that the physical inventory count revealed that the
computer records used by Main, which listed inventory
of $7 million, overstated the actual inventory by $2.5
million.

Significantly, even if Hennings's records accurately
recorded the inventory as of October 1, 1997, Van Diest
has not presented any evidence of the amount of that
inventory that was subject to its security interest. Main
assumed that Van Diest's proportion of Hennings's inven-
tory on that date was the same as the proportion in which
it supplied Hennings thereafter, but there is nothing in the
record to support that assumption. Van Diest cannot
overcome a motion for summary judgment with specula-
tion. *See Packman v. Chi. Tribune Co.*, 267 F.3d 628,
637 (7th Cir. 2001). Because the starting balances of each
product necessarily affect later percentages, speculation
as to the starting proportions means that all future
percentages Main calculated were also merely speculative.
Showing the amount of product supplied to Hennings
after October 1, 1997 is not sufficient when there is no
evidence of the starting proportion.

Although the court in *Halmar* found a creditor had
identified proceeds using the pro rata method, *Halmar*

does not help Van Diest. In *Halmar*, the parties agreed on the quantity of inventory before commingling and agreed on the proportion of starting inventory subject to the secured creditor's claim. 232 B.R. at 25. From there, the secured creditor presented evidence of the total product shipped to a company and calculated the percentage attributable to it. *Id.* Unlike the plaintiff in *Halmar*, however, Van Diest has presented no evidence of the percentage of inventory it supplied before the goods were commingled.

In short, Van Diest had the burden of identifying its proceeds, and it has not presented evidence to show that it could do so under the only methodology it presented. Of course, this is a difficult result for Van Diest, as Hennings, one of its long-time customers, failed to pay it for inventory it had ordered. Noticeably absent from this case, of course, is Hennings. Hennings's inability to pay its debts means that there are insufficient funds to pay both Van Diest and Shelby. Under Illinois law, however, the burden fell to Van Diest to identify its proceeds. *See Funk*, 89 Ill. 2d at 33 ("We find no principles in law or equity which dictate that the innocent third party must suffer the consequences of Funk's predicament. . . . Funk failed to offer the proof required to identify the claimed proceeds and is not now entitled a second opportunity to do so.") Because Van Diest did not present evidence that it could do so, we are compelled to affirm.

## III. CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.

No. 03-4144                                                    13

A true Copy:

Teste:

Clerk of the United States Court of
Appeals for the Seventh Circuit

USCA-02-C-0072—10-3-05